**FREY DAIRY, a Michigan co-partnership, Plaintiff–Appellant,**

v.

**A.O. SMITH HARVESTORE PRODUCTS, INC., a Delaware corporation, and Michigan Glass Lined Storage, Inc., a Michigan corporation, Defendants–Appellees.**

No. 88–1285.

United States Court of Appeals,
Sixth Circuit.

Argued March 27, 1989.

Decided Sept. 22, 1989.

---

Jack J. Mazzara (argued), Mark Granzotto (argued), Detroit, Mich., John Paterson, Sandusky, Mich., for Frey Dairy.

William Vanderhoef, Detroit, Mich., for A.O. Smith Harvistore Products, Inc.

Terry S. Welch, Michael Reynolds (argued), Mt. Clemens, Mich., for Michigan Glass Lined Storage, Inc.

David Aldrich, Lansing, Mich., for Blue Water Harvestore Systems, Inc.

Before MERRITT and NELSON, Circuit Judges, and LIVELY, Senior Circuit Judge.

MERRITT, Circuit Judge.

Frey Dairy, plaintiff-appellant in this Michigan contract and tort law case, challenges the order of the District Court granting summary judgment to defendants for damages arising from the performance of grain silos manufactured by defendant A.O. Smith Harvestore Products, Inc. and sold to Frey Dairy by defendant Michigan Glass Lined Storage, Inc. 680 F.Supp. 253.

Specifically, Frey Dairy challenges as erroneous the District Court's ruling that its tort claims are barred by the economic loss doctrine, a judicially created doctrine which bars recovery in tort where the relationship between the parties is contractual and the only losses alleged are economic. The doctrine is used when a contract does not spell out the legal remedies contemplated by the parties with clarity and when the provisions of a contract do not specifically waive tort remedies in favor of enumerated contract remedies. Additionally, Frey Dairy challenges as erroneous the District Court's ruling that Frey Dairy's breach of implied warranty claim is time-barred under the statute of limitations of the Michigan Uniform Commercial Code, which requires that all claims be brought within four years of tender of delivery, regardless of when the breach was discovered.

We conclude, however, that the very contract which Frey Dairy entered into with Michigan Glass precludes the relief it now requests. The contract itself expressly waives tort remedies in favor of limited contract remedies which the plaintiff does not seek to enforce in this action. For this reason, we affirm the order of the District Court dismissing the case.

I.

Frey Dairy is a Michigan co-partnership which operates a large dairy farm in Brown City, Michigan. In the spring of 1980, Frey Dairy entered into an agreement to purchase three new scientifically designed, steel and glass silos manufactured by Harvestore and constructed and distributed by Michigan Glass. The purchase order, signed by Mike Frey, Lulubell Frey and David Siegers as buyers, contained *inter alia* the following "Preamble":

Preamble—Buyer understands the conditions of use of the products and is not relying on the skill or judgment of the Manufacturer or Seller in selecting them because Buyer acknowledges that farming and livestock feeding results are very much the product of individual effort combined with various climatic, soil, water, growing and feeding conditions which are beyond the control of the Manufacturer and Seller. Buyer recognizes that any advertisements, brochures, and other written statements which he may have read, including any farm profit plan which may have been shown to him, as well as any oral statement which may have been made to him, concerning the potential of the Harvestore and or Slurrystore units and allied machinery and equipment, are not guarantees and he has not relied upon them as such because

the products will be under Buyer's exclusive management and control.

The purchase order contained the following "WARRANTY OF MANUFACTURER AND SELLER" clause:

If within the time limits specified below, any product sold under this purchase order, or any part thereof, shall prove to be defective in material or workmanship upon examination by the Manufacturer, the Manufacturer will supply an identical or substantially similar replacement part f.o.b. the Manufacturer's factory, or the Manufacturer, at its option, will repair or allow credit for such part. The Seller warrants only that the foundation will be properly installed and that the product will be erected in strict conformance with the Manufacturer's specifications. It is not intended hereby, and under no circumstances shall this writing be so construed, to extend any warranty whatsoever by A.O. Smith Harvestore Products, Inc. ("AOSHPI") to or for any product sold under this purchase order which has not been manufactured by or for AOSHPI and marked accordingly.

The purchase order also contained the following "DISCLAIMER":

### SECOND DISCLAIMER

NO OTHER WARRANTY, EITHER EXPRESS OR IMPLIED AND INCLUDING A WARRANTY OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE HAS BEEN OR WILL BE MADE BY OR IN BEHALF OF THE MANUFACTURER OR THE SELLER OR BY OPERATION OF LAW WITH RESPECT TO THE EQUIPMENT AND ACCESSORIES OR THEIR INSTALLATION, USE, OPERATION, REPLACEMENT OR REPAIR. NEITHER THE MANUFACTURER NOR THE SELLER SHALL BE LIABLE BY VIRTUE OF THIS WARRANTY, OR OTHERWISE, FOR ANY SPECIAL OR CONSEQUENTIAL LOSS OR DAMAGE (INCLUDING BUT NOT LIMITED TO THOSE RESULTING FROM THE CONDITION OR QUALITY OF ANY CROP OR MATERIAL STORED IN THE STRUCTURE) RESULTING FROM THE USE OR LOSS OF THE USE OF EQUIPMENT AND ACCESSORIES. THE MANUFACTURER MAKES NO WARRANTY WITH RESPECT TO THE ERECTION OR INSTALLATION OF THE EQUIPMENT, ACCESSORIES, OR RELATED EQUIPMENT BY THE HARVESTORE DEALER, WHO IS AN INDEPENDENT CONTRACTOR, OR BY ANY OTHER INDEPENDENT CONTRACTOR. IRRESPECTIVE OF ANY STATUTE, THE BUYER RECOGNIZES THAT THE EXPRESS WARRANTY SET FORTH ABOVE, IS THE EXCLUSIVE REMEDY TO WHICH HE IS ENTITLED AND HE WAIVES ALL OTHER REMEDIES, STATUTORY OR OTHERWISE.

Finally, the purchase order contained the following "ACKNOWLEDGEMENT AND RELIANCE" clause:

I HAVE READ AND UNDERSTOOD THE TERMS AND CONDITIONS OF THIS PURCHASE ORDER INCLUDING THE WARRANTIES, DISCLAIMERS AND TERMS AND CONDITIONS HEREIN GIVEN TO ME, EITHER BY THE MANUFACTURER OR THE SELLER. I RELY ON NO OTHER PROMISES OR CONDITIONS AND REGARD THAT AS REASONABLE BECAUSE THESE ARE FULLY ACCEPTABLE TO ME.

The silos were delivered and installed later that year. Frey Dairy alleges that the silos did not operate properly, exposing the hay stored therein to too much oxygen and causing the resulting silage to provide inferior nutrition for its dairy cows. As a result of the silos' poor performance, Frey Dairy continues, its cows were physically harmed, diseases among the cows increased, calf mortality increased and milk production decreased. This harm to the cows, Frey Dairy asserts, resulted in lost profits and the substantial deterioration of its reputation.

The parties disagree as to when Frey Dairy discovered that the silos caused the harms it alleges. Defendants assert that Frey Dairy knew or at least suspected that

the silos caused the harm as early as 1980. Frey Dairy asserts that it did not discover this causal link until 1986.

Frey Dairy filed a petition for Chapter 11 bankruptcy in July, 1986. In conjunction with the bankruptcy proceedings, Frey Dairy filed its contract and tort law claims against both Harvestore and Michigan Glass. The Bankruptcy Court transferred the action to the District Court in February, 1987 for trial as a "non-core" proceeding. *See* 28 U.S.C. § 157.

The District Court granted summary judgment to defendants on February 17, 1988. The Court held *inter alia* that plaintiff's claim for breach of express and implied warranty was time-barred by the Michigan Uniform Commercial Code's statute of limitations which provides that such actions must be brought within four years of tender of delivery regardless of the aggrieved party's lack of knowledge of the breach. *See* M.C.L. § 440.2725(1)—(2). The Court further held that plaintiff's tort claims fell within and were therefore barred by the economic loss doctrine which prohibits tort actions for damages resulting from a product defect where the parties acted pursuant to a contract of sale and the losses alleged are purely economic.

Frey Dairy appealed those rulings. Defendants moved to strike certain of plaintiff's arguments alleging that Frey Dairy did not raise them below. By amended order entered May 23, 1989, this Court denied the motion to strike and certified the following questions to the Michigan Supreme Court:

1. Under Michigan law, does the economic loss doctrine operate to bar tort claims sounding in negligence and gross negligence where the foundation of the parties' relationship is contractual and the only losses alleged are economic losses?

2. Under Michigan law, are breach of implied warranty claims under the U.C.C. where there is no express warranty of future performance, subject to M.C.L. § 440.2725, which rejects any discovery rule for such claims under the U.C.C., or to M.C.L. § 600.5833, which announces a

discovery rule for breach of warranty claims?

3. Under Michigan law, is a breach of implied warranty claim, where there is no express warranty of future performance but where plaintiff alleges that defects in a warranted product caused plaintiff's damages, subject to the U.C.C., which, by M.C.L. § 440.2725, rejects any discovery rule for claims not involving breach of an express warranty of future performance, or to the Products Liability Act, M.C.L. § 600.5805, and thus to the discovery rule announced at M.C.L. § 600.5833?

The Michigan Supreme Court declined to answer the questions.

## II.

We conclude that it is not necessary to reach the economic loss and statute of limitations issues under Michigan law. Michigan law is unclear on these questions.

■ Frey Dairy has expressly waived all remedies, statutory or otherwise, to which it may have been entitled except that of replacement and/or repair, a remedy that it does not seek to enforce in the action. Specifically, Frey Dairy agreed to the following terms:

IRRESPECTIVE OF ANY STATUTE, THE BUYER RECOGNIZES THAT THE EXPRESS WARRANTY SET FORTH ABOVE, IS THE EXCLUSIVE REMEDY TO WHICH HE IS ENTITLED AND HE WAIVES ALL OTHER REMEDIES, STATUTORY OR OTHERWISE.

Frey Dairy has expressly acknowledged that it understood the terms and conditions of the contract and believed them reasonable. It has not attacked the contract as void as against public policy or as unconscionable. Nor has it maintained that some later agreement modifying the contract was made or offered any reason for not enforcing the exclusive remedy provided in the contract. It abandoned its fraud and misrepresentation claims. Under these circumstances, it cannot now be heard to complain that dismissal of its suit is unfair or contrary to law.

We recognize that there has been a long-standing tension between contract and tort law and that, in the border land between the two, parties have often been permitted to engage in the practice of election of remedies whereby they waive the contract in order to sue in tort and vice versa. *See Prosser & Keeton on Torts* § 92, at 666 (5th ed. 1984) (when "claim is one for damages to property or to pecuniary interests only, the tendency has been with some occasional dissent [citing a Michigan case] to allow the election"). Here, however, the contract itself contains clear provisions narrowly limiting the purchaser's remedy to specified forms of economic loss, provisions which are not attacked as invalid. We, therefore, need only look to the provisions of the contract. There is no need to resort to the judicially created economic loss doctrine to delineate the line to be drawn between tort and contract remedies. The contract itself represents the bargain the parties made on this subject.

### III.

For the foregoing reasons, we affirm the decision of the District Court dismissing this case.